T.C. Memo. 2016-220

UNITED STATES TAX COURT

CHINWEIKE NWABASILI, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 13227-14.                          Filed December 5, 2016.

Chinweike Nwabasili, for himself.

<u>Christopher M. Groboske</u>, for respondent.

MEMORANDUM FINDINGS OF FACT AND OPINION

MORRISON, <u>Judge</u>:  The respondent (referred to here as the "IRS") issued

a notice of deficiency to the petitioner, Mr. Chinweike Nwabasili, for the 2011 tax

year determining an income-tax deficiency of $5,002 and an accuracy-related

[*2] penalty under section 6662(a) of $1,000.40.[1] Nwabasili timely filed a petition under section 6213(a) for redetermination of the deficiency and the penalty.[2] We have jurisdiction under section 6214(a).

As to the amount of the deficiency, the sole issue to resolve is whether the notice of deficiency correctly disallowed the deductions that Nwabasili claimed on his 2011 Schedule C, "Profit or Loss From Business", in the following expense categories: (1) travel, (2) meals and entertainment, and (3) other expenses. We hold that the notice of deficiency correctly disallowed these deductions. We also hold that Nwabasili is liable for the accuracy-related penalty.

## FINDINGS OF FACT

During 2011 Nwabasili worked as an engineer at Met Laboratories, Inc., which paid him wages of $70,403. He was also involved in two businesses with his brother. The first business was promoting events such as musical performances. In the case of musical performances, Nwabasili and his brother

---

[1]Unless otherwise indicated, all section references are to the Internal Revenue Code in effect for the year in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure.

[2]He was a resident of California when he filed the petition. Therefore, an appeal of our decision in this case would go to the U.S. Court of Appeals for the Ninth Circuit, see sec. 7482(b)(1), unless the parties designate the Court of Appeals for another circuit, see id. para. (2).

[*3] would rent a bar and pay a band to play there. They would advertise the performance, sell tickets, and collect the proceeds of the ticket sales. The second business was reselling cars. They would buy used cars in the United States, ship them to Nigeria, and sell them. Nwabasili attached a single Schedule C to his 2011 Form 1040, "U.S. Individual Income Tax Return", to report his income and expenses for both businesses. The Schedule C showed receipts of only $6,350. However, it showed business expenses of $56,252 from various expense categories on the Schedule C. The categories of expenses and the amounts that Nwabasili reported in each category were as follows:

Nwabasili's Schedule C expenses (as reported)

| Expense category | Amount |
| --- | --- |
| Advertising | $4,840 |
| Commissions and fees | 3,300 |
| Office | 9,140 |
| Repairs and maintenance | 4,800 |
| Supplies | 5,220 |
| Taxes and licenses | 300 |
| Travel | 3,455 |
| Meals and entertainment | 392 |
| Utilities | 2,365 |
| Other | 22,440 |
| Total | 56,252 |

The IRS audited Nwabasili's tax return but scrutinized only three Schedule C expense categories: (1) travel, (2) meals and entertainment, and (3) other

[*4] expenses. The IRS issued a notice of deficiency disallowing all deductions in these three categories. It made no adjustments in any other categories. At trial Nwabasili contended that he was entitled to a total of $25,336 of deductions in these three disputed categories.[3] The $25,336 consists of the following 12 alleged payments:

| | Business | Schedule C category | Nature of alleged payment |
|---|---|---|---|
| Business-expense deductions sought by Nwabasili | | | |
| 1 | Event promotion | Other expenses | $6,000 cash payment by Nwabasili to his brother for his brother to pay for musician Flavour Nabania and his band to perform at the bar New Karibbean City in Oakland, California, on Thursday, Nov. 24, 2011 |
| 2 | Event promotion | Other expenses | $1,195 cash payment by Nwabasili to his brother for his brother to pay New Karibbean City to rent the bar for the night of Flavour Nabania's performance and to pay for security for the night |
| 3 | Event promotion | Travel | $3,749 of debit card payments by Nwabasili for flights for Flavour Nabania and his band from Houston to Oakland the day before Flavour Nabania's performance and from Oakland to Los Angeles the day after Flavour Nabania's performance. The cost of each flight was $249.50 for the Houston to Oakland flights and $95.70 for the Oakland to Los Angeles flights. |
| 4 | Event promotion | Meals and entertain-ment | $552.26 cash payment by Nwabasili to the Boko restaurant in Oakland, California, the day before Flavour Nabania's performance, for food for Flavour Nabania and his band |

---

[3]By comparison Nwabasili had reported deductions totaling $26,287 in these three categories.

| | | | |
|---|---|---|---|
| **[*5]** 5 | Event promotion | Other expenses | $1,837.78 of debit card payments by Nwabasili to Oakland hotels for the hotel stay of Flavour Nabania and his band the nights before and after Flavour Nabania's performance |
| 6 | Event promotion | Other expenses | $1,000 cash payment by Nwabasili to his brother so that his brother could pay a musician named London to perform at New Karibbean City in Oakland, California, on Nov. 19, 2011.  A receipt signed by Nwabasili's brother says that Nwabasili made the payment to his brother, but Nwabasili testified that he paid London directly.  (Given this testimony we do not find credible his initial claim that he made a payment to his brother.  We consider his claim to be that he made the $1,000 payment directly to London.) |
| 7 | Car export | Other expenses | $2,000 payment by check from Nwabasili to American Auto Link for the purchase of a Honda CRV |
| 8 | Car export | Other expenses | $3,000 payment (a $2,700 cash payment and a $300 payment by check) from Nwabasili to his brother so his brother could pay American Auto Link for a Toyota Sienna |
| 9 | Car export | Other expenses | $1,700 cash payment by Nwabasili to his brother so that his brother could pay American Auto Link for an Acura TL |
| 10 | Car export | Other expenses | $2,300 payment by check from Nwabasili to Inter Global Logistics.  This relates to a $2,300 invoice sent by Inter Global Logistics to Nwabasili's brother for the service of shipping the three cars (Honda CRV, Toyota Sienna, and Acura TL) from the United States to Nigeria. |
| 11 | Both | Other expenses | $1,281.96 of payments for internet and television service to Nwabasili and his brother at their residence in Alameda, California.  There are 12 monthly payments of $106.83 per month. |
| 12 | Both | Other expenses | $720 of payments for cell phone service.  There are 12 monthly payments of $60 per month. |
| Total | | | $25,336 |

**[*6]** Nwabasili thus alleges that several of the payments--(1), (2), (8), and (9)-- were actually two payments:  first, his payment to his brother; second, his brother's payment to a third party.  For example, as to payment (1), Nwabasili alleges that he paid his brother $6,000 and that his brother paid $6,000 to Flavour Nabania (or his agent) to perform music.

We find that Nwabasili or his brother made all the payments to the third parties described in the above table.  Thus, we find that Nwabasili or his brother made the following payments:  (1) $6,000 for Flavour Nabania and his band to perform in Oakland on November 24, 2011, (2) $1,195 to New Karibbean City for rent and a security fee, (3) $3,749 for the flights for Flavour Nabania and his band, (4) $552.26 to a restaurant in Oakland, (5) $1,837.78 to Oakland hotels, (6) $1,000 to a musician named London, (7) $2,000 for a Honda CRV, (8) $3,000 for a Toyota Sienna, (9) $1,700 for an Acura TL, (10) $2,300 to ship the three vehicles to Nigeria, (11) $1,281.96 for internet and television services, and (12) $720 for cell phone service.  That these payments were made is supported by documentary evidence and by Nwabasili's testimony.

Nwabasili contends that it was he, not his brother, who paid the third party regarding payments (3), (4), (5), (6), (7), (10), (11), and (12).  We agree with Nwabasili that he made payments (3), (4), (5), (7), and (10).  For the other

**[*7]** payments--(6), (11), and (12)--we do not find which brother made them. As explained below, all expenses of the event-promotion and car-export businesses are expenses of the partnership between the brothers. Therefore, the expenses are deductible to the partnership no matter which brother paid the expenses. To the extent payments (6), (11), and (12) are deductible business expenses, they are deductions of the partnership no matter which partner paid the expenses.

As explained above, for several of the payments Nwabasili contends his brother made a payment to the third party and that he made a reimbursement payment to his brother. These are payments (1), (2), (8), and (9).[4] It is

---

[4]The documentary record of these brother-to-brother payments is meager. All of the brother-to-brother payments were alleged to have been made in cash except for a $300 payment made by a check dated September 9, 2011. Allegedly the $300 check was a partial reimbursement of the $3,000 cost of a Toyota Sienna. Although Nwabasili showed that he withdrew money from his bank account in amounts that mostly matched the amounts he claimed he paid his brother, that proves only that he withdrew the money from his bank account. It does not show that he paid over the money he withdrew to his brother. To show that he paid over the withdrawn cash to his brother, Nwabasili produced receipts from his brother. Each of the receipts had the following information: (1) the amount of the alleged cash payment from Nwabasili to his brother, (2) the date of the alleged cash payment, and (3) the alleged purpose of the alleged cash payment. Thus, for the $6,000 cash payment that Nwabasili made to his brother to allegedly reimburse his brother for paying for the performance of Flavour Nabania, the receipt includes the following information:

"six thousand dollars"
"date": "11/23/2011"

(continued...)

**[*8]** unnecessary to determine whether Nwabasili made a reimbursement payment

to his brother.  To the extent the brother's payment to the third party is a

_____

> [4](...continued)
> "for":  "flavour balance payment"
> "by":  [brother's signature]

If we believe the receipts are reliable, then the receipts prove that the brother-to-brother payments were made.  However, the IRS contends the receipts are unreliable for two reasons.  First, Nwabasili testified that the receipts were filled out on the dates written on the receipts.  The receipts are from a preprinted book of consecutively numbered receipts.  But the dates written on the receipts are in an order different from the receipt numbers.  For example, receipt No. 3959<u>51</u> is dated November 23, 2011.  Receipt No. 3959<u>83</u> is dated November 17, 2011.  This, the IRS suggests, means that the receipts were not filled out on the dates written on the receipts.  Second, Nwabasili initially attempted to convince the Court that the receipts were signed not by his brother, but by the ultimate payee.  For example, Nwabasili initially testified that the November 23, 2011 receipt for $6,000 was signed by an agent for Flavour Nabania and that Nwabasili, and not his brother, had made the $6,000 payment.  But under cross-examination, Nwabasili admitted that his brother had signed this receipt.  Consistent with this admission, he made other changes to his version of events.  He abandoned his claim that he had paid Flavour Nabania directly.  He admitted that his brother had made the $6,000 payment to Flavour Nabania.  But he testified that he had reimbursed his brother for the payment.  The IRS concludes that all the receipts ostensibly showing that Nwabasili paid his brother are false.  And although Nwabasili testified that he made the payments to his brother, the IRS contends that Nwabasili's testimony is unbelievable.

   As explained above, Nwabasili initially alleged that he made payments (1), (2), (8), and (9) to the respective third parties himself, and he submitted receipts that he initially claimed were signed by the third parties.  But later Nwabasili conceded that the receipts had been signed by his brother rather than the third parties and alleged that actually his brother had made the payments to the third parties and that he made matching reimbursement payments to his brother.  For these payments, we consider Nwabasili's final allegation to be that his brother paid the third parties and that he paid his brother.

**[\*9]** deductible business expense, it is a partnership expense even if Nwabasili did not reimburse his brother.

The following table summarizes Nwabasili's allegations and our findings as to who made the 12 alleged payments:

[*10]

| Payment | Amount of payment | Cashflows as alleged by Nwabasili | Cashflows as determined by the Court |
|---|---|---|---|
| 1 | $6,000.00 | N→B→3 | N→B→3 or B→3 |
| 2 | 1,195.00 | N→B→3 | N→B→3 or B→3 |
| 3 | 3,749.00 | N−−→3 | N−−→3 |
| 4 | 552.26 | N−−→3 | N−−→3 |
| 5 | 1,837.78 | N−−→3 | N−−→3 |
| 6 | 1,000.00 | N−−→3 | N−−→3 or B→3 |
| 7 | 2,000.00 | N−−→3 | N−−→3 |
| 8 | 3,000.00 | N→B→3 | N→B→3 or B→3 |
| 9 | 1,700.00 | N→B→3 | N→B→3 or B→3 |
| 10 | 2,300.00 | N−−→3 | N−−→3 |
| 11 | 1,281.96 | N−−→3 | N−−→3 or B→3 |
| 12 | 720.00 | N−−→3 | N−−→3 or B→3 |
| Total | 25,336.00 | | |

**[*11]**                                              OPINION

The taxpayer has the burden of proving that the IRS's determinations in the notice of deficiency are incorrect.  See Rule 142(a)(1); Welch v. Helvering, 290 U.S. 111, 115 (1933).  However, the IRS bears the burden of proof if, for a particular fact issue, the taxpayer (a) introduces credible evidence, (b) meets all applicable substantiation requirements, (c) complies with all recordkeeping requirements, and (d) cooperates with any reasonable request for information from the IRS.  Sec. 7491(a).  Nwabasili does not assert, and the record does not demonstrate, that the requirements of section 7491(a) have been met.  Therefore, the burden of proof remains on Nwabasili.

Section 162(a) allows a deduction for expenses paid or incurred by the taxpayer in carrying on a business.  The IRS concedes that Nwabasili carried on an event-promotion business and a car-export business but contends that Nwabasili's brother also carried on an event-promotion business and a car-export business.  In the IRS's view, the two brothers have their own businesses.[5]  Consistent with this

---

[5]Although in the IRS's view Nwabasili's businesses are separate from his brother's businesses, this does not necessarily mean that the IRS views the businesses as unrelated.  For example, if Nwabasili were providing services to his brother by helping his brother with his brother's event-promotion and car-export businesses, then providing these services could constitute Nwabasili's own business.  Nwabasili could be entitled to deduct the expenses of providing these

(continued...)

**[*12]** view, the IRS contends that Nwabasili must prove that the disputed expenses relate to his businesses, not his brother's. Furthermore, the IRS contends that Nwabasili failed to prove he made any of the payments. Nwabasili contends that he and his brother were partners in both the event-promotion business and the car-export business. He also contends that he personally paid the disputed expenses, either directly, or indirectly through a reimbursement payment to his brother.

We first consider Nwabasili's contention that he and his brother are partners. A partnership is created "when persons join together their money, goods, labor, or skill for the purpose of carrying on a trade, profession, or business and when there is community of interest in the profits and losses." Commissioner v. Tower, 327 U.S. 280, 286 (1946). Whether parties have formed a partnership is a question of fact, and while all circumstances are to be considered, the essential question is whether the parties intended to, and did in fact, join together for the present conduct of an undertaking or enterprise. Luna v. Commissioner, 42 T.C. 1067, 1077 (1964). It is not necessary for partners to file a partnership tax return for their partnership to be respected for federal tax purposes. See Ayrton Metal Co. v. Commissioner, 299 F.2d 741, 742 (2d Cir. 1962), aff'g in part, rev'g in part

---

⁵(...continued)
services under sec. 162(a), which provides that the ordinary and necessary expenses of carrying on a business are deductible.

[*13] 34 T.C. 464 (1960). Nwabasili credibly testified that he and his brother were partners in the two businesses. He credibly testified that he and his brother agreed to share the income and expenses of the two businesses. He explained how they divided the tasks with respect to the businesses. Although many of the business documents referred to his brother and not him, Nwabasili explained that this was because his brother was the front man for the businesses even though they considered themselves equal partners.

We find that the brothers intended to join together to conduct the businesses. The event-promotion business and the car-export business were conducted in partnership.

Although a partnership is not itself subject to income tax, sec. 701, the income or loss of a partnership is computed as an initial step in calculating the partners' tax liabilities, sec. 1.703-1(a)(1), Income Tax Regs. The partnership's income for a year is equal to the excess of its gross income over its deductions. Id. subdiv. (i). The partnership's loss for a year is equal to the excess of its deductions over its gross income. Id. subdiv. (ii). In computing their tax liabilities, the partners take into account their distributive shares of the partnership's income or loss. Sec. 702(a)(7); sec. 1.702-1(a)(9), Income Tax Regs.

**[\*14]**  The disputed $25,336 in payments related to businesses conducted by the partnership (except for payments of any personal expenses).  An expense of a partnership cannot be deducted directly by a partner on the partner's tax return.  Klein v. Commissioner, 25 T.C. 1045, 1051 (1956).[6]  Any deduction resulting from the $25,336 in payments is a deduction of the partnership.[7]  It is included in the computation of the partnership's income or loss.  See sec. 1.703-1(a)(1)(i) and (ii), Income Tax Regs.  The partnership's income or loss, computed including the deductible portion of the $25,336 in payments, should ordinarily be passed

---

[6]There is an exception to this rule where the partnership agreement requires partners to bear their own costs.  Klein v. Commissioner, 25 T.C. 1045, 1051-1052 (1956).  This exception does not apply to the alleged expenses in dispute here because there is no evidence of such an agreement requiring the brothers to bear their own costs.

[7]Although we find that either Nwabasili or his brother made all of the 12 disputed payments, this does not mean that all the payments are deductible against the income of the partnership.  First, some of the payments may not be entirely related to the brothers' businesses.  See sec. 262(a) (no deduction for personal expenses).  These are payments (11) for internet and television service at the brother's residence and (12) for cell phone service.  Second, some of the payments are for the types of expenses that are deductible only if proof of the expense is made through specified types of evidence.  See sec. 274(d).  These are payments (3) for air travel, (4) for meals, and (5) for hotels.  Third, any deduction for payment (4) for meals is subject to a 50% limitation.  See sec. 274(n)(1)(A).  We need not decide whether all 12 payments are deductible against the income of the partnership because, as we hold below, Nwabasili has not shown that he had a sufficient adjusted basis in his partnership interest at the end of 2011.

[*15] through to Nwabasili and his brother in proportion to each brother's distributive share.  See sec. 702(a)(7); sec. 1.702-1(a)(9), Income Tax Regs.[8]

The calculation of the partnership's income or loss requires us first to calculate the gross income of the partnership.  Nwabasili appears to have reported some of the gross income (i.e., receipts) for the two businesses operated in partnership on his Schedule C attached to his Form 1040.  But Nwabasili admitted that he did not report all of the gross income for the two businesses on his Schedule C.  And the record does not give us any further information with which to calculate the gross income of the partnership.

There is also a problem with calculating the deductions of the partnership.  Although Nwabasili testified generally that the businesses lost money, he did not supply us with information about the amounts of the deductions that correspond to the losses other than the $25,336 in payments he seeks to deduct in the three disputed categories.

_____

[8]A partner's distributive share is determined by the partnership agreement, or, if there is no partnership agreement, by the partner's interest in the partnership. Sec. 704(a) and (b); sec. 1.704-1(b)(3)(ii), Income Tax Regs. (setting forth factors considered in determining a partner's interest in a partnership).  There is no formal partnership agreement between Nwabasili and his brother.  The exact distributive share does not matter because, as we explain below, Nwabasili has not proven the gross income of the partnership, the deductions of the partnership, and his adjusted basis in his interest in the partnership, and this failure is fatal to his claiming deductions for the expenses of the partnership for tax year 2011.

**[\*16]** Even if we could calculate the partnership's loss, we face another problem in determining the deductible portion of Nwabasili's distributive share of the loss. Section 704(d) provides that a partner's distributive share of a partnership loss is allowed as a deduction only to the extent of the adjusted basis of the partner's interest in the partnership at the end of the tax year.

To be entitled to his share of any partnership loss, Nwabasili had to have a sufficient adjusted basis in his partnership interest at the end of 2011. See sec. 704(d). The basis of a partner's interest in the partnership acquired by a contribution of money is initially equal to the money the partner initially contributed. Sec. 722. It is increased by any other contributions by the partner to the partnership. Secs. 722, 705(a); William S. McKee, et al., 1 Federal Taxation of Partnerships and Partners (4th ed. 2007) para. 6.02[1], at 6-5 ("The partner's initial basis for his interest is adjusted by taking into account all subsequent contributions by the partner to the partnership, distributions from the partnership to the partner, and the partner's shares of taxable and nontaxable income and expense of the partnership, up to the date as of which the partner's outside basis is to be determined."). It is generally increased by the sum of the partner's shares of taxable income for the year and prior years. Sec. 705(a)(1)(A). It is generally decreased by the sum of the partner's distributive shares of the partnership losses

**[\*17]** for the year and prior years. Sec. 705(a)(2). It is generally decreased by any distributions by the partnership to the partner during the year and prior years. Secs. 705(a)(2), 722. When a partner pays an expense of the partnership, that payment is considered a contribution by the partner to the partnership that increases the adjusted basis of the partner's interest in the partnership. Secs. 722, 705(a); McKee et al., supra at 6-7 n.22 ("Payment of a partnership liability by a partner is the equivalent of a cash contribution for § 705(a) basis computation purposes."). Thus, Nwabasili could argue that the $25,336 in payments, if made by him (as opposed to his brother), should increase his adjusted basis in his interest in the partnership. We need not reach the question of whether the $25,336 in payments should increase his adjusted basis in the partnership because this is only one potential component of Nwabasili's adjusted basis in his interest in the partnership. For example, had Nwabasili received distributions from the partnership, the distributions would have decreased his adjusted basis and could have completely offset any increase to adjusted basis. If Nwabasili's brother made a payment to him, for example, to reimburse him for partnership expenses he paid, then this could be treated as a distribution from the partnership to Nwabasili. Nwabasili seemed to claim that the brothers often made reimbursement payments to each other. So it is plausible that Nwabasili received reimbursement payments

[*18] from his brother that would be deemed to be distributions from the partnership. The record does not reveal the contributions that Nwabasili made to the partnership or the distributions that the partnership made to him. Without this information, we cannot calculate his adjusted basis in his partnership interest. Because Nwabasili has the burden of proof, we hold that section 704(d) precludes him from deducting any part of the partnership loss.[9] Because the $25,336 in payments is part of the partnership loss (if the payments are deductible at all, see supra note 7), Nwabasili is not entitled to deduct the $25,336 in payments. See sec. 704(d).

In summary we have identified three obstacles to determining how much of the $25,336 of disputed payments should be passed through to Nwabasili even if these payments are deductible: (1) lack of information as to the gross income of the partnership, (2) lack of information as to deductions for expenses other than the $25,336 of disputed payments, and (3) lack of information about Nwabasili's adjusted basis in his partnership interest.

The IRS did not raise these matters regarding the difficulty of calculating Nwabasili's distributive share of the partnership loss. Normally we do not

---

[9]A similar approach was taken in Mladinich v. Commissioner, T.C. Memo. 1969-185, and Lemons v. Commissioner, T.C. Memo. 1997-404.

[*19] consider matters not raised by the parties. We make an exception in this instance. Nwabasili did not explain to the IRS until trial that he had a partnership with his brother. He filed his tax return as if he was not in partnership with his brother. This gave the IRS the false impression that his disputed Schedule C expenses related to businesses that were exclusively his and that he had paid the disputed expenses. He manipulated documents in an attempt to show that he had made payments that were actually made by his brother. See supra note 4. Given Nwabasili's subterfuge, it is understandable that the IRS remained skeptical of whether the disputed expenses related to Nwabasili at all, whether directly or through a partnership. That the IRS did not contend that the disputed deductions should be evaluated under the partnership tax rules (subchapter K of the Internal Revenue Code, sections 701 to 777) and disallowed for lack of information about the partnership's gross income, the partnership's deductions, or the adjusted basis in the partnership, does not prevent us from holding that the deductions should be denied on these grounds. After all, it was Nwabasili who presented persuasive evidence that his businesses were conducted in partnership with his brother. For us to sustain the deductions he seeks on the ground that his businesses were conducted not in partnership with his brother would be contrary to what he argued at trial. And it would be contrary to our view of the reality of the business

[*20] arrangements. We believe that Nwabasili conducted his businesses in partnership with his brother. Partnerships are taxed under the partnership tax rules.

We now consider whether Nwabasili is liable for the section-6662(a) penalty for 2011. Section 6662(a) and (b)(1) and (2) imposes a 20% penalty on the portion of an underpayment of tax attributable to (1) negligence or disregard of rules or regulations or (2) any substantial understatement of income tax. The penalty under section 6662(a) is not imposed on a taxpayer who had reasonable cause for the underpayment and acted in good faith with respect to the underpayment. Sec. 6664(c)(1).

With respect to any penalty, the burden of production is on the IRS. Sec. 7491(c). The IRS must come forward with evidence that it is appropriate to impose the penalty. Id.; Higbee v. Commissioner, 116 T.C. 438, 446 (2001). Once the IRS has met this burden, the taxpayer bears the burden of proving that the penalty is inappropriate because, for example, the taxpayer acted with reasonable cause and in good faith. Higbee v. Commissioner, 116 T.C. at 447.

We hold that the underpayment, which was attributable to the disputed Schedule C deductions, was due to Nwabasili's negligence. At trial, Nwabasili produced enough evidence for us to find that he and his brother operated the

[*21] event-promotion business and the car-export business in partnership with each other. However, the record does not show that he told his tax return preparer that the businesses were operated as a partnership. Had this been known, the tax return preparer could have prepared a partnership tax return; and, in the course of preparing the partnership return and Nwabasili's return, the preparer could have calculated the partnership's gross income, the partnership's deductions, and Nwabasili's adjusted basis in his interest in the partnership.

The underpayment may also be attributable to a substantial understatement of income tax. An understatement of tax is generally equal to the correct tax minus the tax shown on the return. Sec. 6662(d)(2)(A). To be substantial, an understatement must exceed 10% of the tax shown on the return. Sec. 6662(d)(1)(A). It must also exceed $5,000. Id. The notice of deficiency does not set forth a computation of the amount of the understatement. The IRS's brief calculates that the understatement is $26,287. But it appears that the IRS's brief calculated the amount of the understatement incorrectly by using amounts of income instead of amounts of income tax. The parties shall address the amount of the understatement and the existence of a substantial understatement of income tax in the Rule 155 computations.

**[*22]** We also hold that Nwabasili did not show that he had reasonable cause for the underpayment or that he acted in good faith with respect the underpayment. See sec. 6664(c)(1).

We have considered all of the arguments the parties have made, and to the extent that we have not discussed them, we find them to be irrelevant, moot, or without merit.

To reflect the foregoing,

Decision will be entered under

Rule 155.