# United States Tax Court

T.C. Memo. 2023-4

KYLE D. SIMPSON AND CHRISTEN SIMPSON,
Petitioners

v.

COMMISSIONER OF INTERNAL REVENUE,
Respondent

————

Docket No. 16923-16.                     Filed January 9, 2023.

————

*Bryan W. Caddell* and *Rain L. Minns*, for petitioners.

*Ann L. Darnold* and *Vassiliki Economides Farrior*, for respondent.


## MEMORANDUM FINDINGS OF FACT AND OPINION

JONES, *Judge*: Pursuant to section 6213(a), Kyle Simpson (Mr. Simpson) and his wife, Christen Simpson (Mrs. Simpson), seek redetermination of deficiencies in federal income tax determined by the Internal Revenue Service (IRS) totaling $12,874, $18,866, and $18,359 for taxable years 2011, 2012, and 2013, respectively.[1] After concessions, the issues for decision are (1) whether certain deductions claimed by petitioners' wholly owned S corporation, Getify Solutions, Inc. (Getify), are properly deductible at the corporate level or, alternatively, as expenses incurred by Mr. Simpson in his capacity as Getify's employee; (2) whether items underlying petitioners' claimed deductions have been substantiated; (3) whether petitioners substantiated Getify's basis in

---

[1] Unless otherwise indicated, all statutory references are to the Internal Revenue Code (Code), Title 26 U.S.C., in effect at all relevant times, all regulatory references are to the Code of Federal Regulations, Title 26 (Treas. Reg.), in effect at all relevant times, and all Rule references are to the Tax Court Rules of Practice and Procedure. All monetary amounts are rounded to the nearest dollar unless indicated otherwise.

[*2] South Austin Co-Working, LLC (Co-Working), so as to justify their purported loss deductions associated with that entity for taxable years 2011 and 2012; (4) whether petitioners are liable for accuracy-related penalties under section 6662(a) with respect to taxable years 2011, 2012, and 2013; and (5) whether petitioners are liable for additions to tax associated with their failure to timely file tax returns under section 6651(a)(1) with respect to taxable years 2012 and 2013.

We hold that (1) the deductions at issue are properly deductible by petitioners as unreimbursed employee expenses, reportable on Schedules A, Itemized Deductions, of their Forms 1040, U.S. Individual Income Tax Return, and subject to the two-percent limitation of section 67(a); (2) with the exception of petitioners' business use of the home expenses for taxable year 2012, petitioners have failed to substantiate the expenses underlying their claimed deductions beyond what respondent has allowed; (3) petitioners did not substantiate their basis in Co-Working and are, therefore, limited to the loss deductions respondent allowed; (4) petitioners are liable for accuracy-related penalties under section 6662(a) for taxable years 2011, 2012, and 2013; and (5) petitioners are liable for additions to tax associated with their failure to timely file tax returns under section 6651(a)(1) with respect to taxable years 2012 and 2013.

## FINDINGS OF FACT

This case was tried on October 1, 2021, during the San Antonio, Texas, remote trial session (via Zoomgov).[2] The Stipulations of Facts, including the jointly stipulated Exhibits contained therein, are

---

[2] This case was originally tried before Judge Carolyn P. Chiechi in September 2017. On October 19, 2018, Judge Chiechi retired from the Tax Court. On October 25, 2018, the Court issued an order informing the parties of Judge Chiechi's retirement and proposing to reassign this case to another judicial officer of the Court for purposes of preparing the opinion and entering a decision based on the record of trial or, alternatively, allowing the parties to request either a new trial or to supplement the record. On November 9, 2018, respondent filed a response consenting to the reassignment of the case and requested that a decision be entered based on the record of trial. On December 4, 2018, petitioners filed a Motion for a New Trial objecting to the reassignment of the case and requesting a new trial. On February 8, 2019, the Court ordered that the case was no longer submitted to Judge Chiechi and granted petitioners' Motion for a New Trial. The new trial was scheduled for the Court's San Antonio session slated to begin on May 4, 2020, but because of concerns about COVID-19, the trial session was canceled and the case was restored to the general docket.

[*3] incorporated by this reference. When Mr. and Mrs. Simpson timely filed the Petition, they resided in Texas.

## I.  *Background*

Mr. and Mrs. Simpson are equal shareholders in Getify, a wholly owned S corporation. Through Getify, Mr. Simpson developed open-source software and sought "to help other developers be better in [his] industry" by gathering "useful information" and making it available to them. In the early stages of developing Getify, Mr. Simpson was employed by three different software development companies: Oasis, Mozilla, and Zynga. However, in 2011, as Getify grew more successful, Mr. Simpson started phasing out his other work. The company's newfound success also provided Mr. Simpson with the opportunity to speak at conferences, teach classes, and write books. Getify maintained a corporate checking account, a corporate savings account, and two corporate credit cards.

Mr. Simpson also participated in the formation of Co-Working, a business that rented office space to be communally shared by people working in the Austin area. Mr. Simpson, acting as Getify's agent, caused Getify to join with two other entities to form Co-Working; each member contributed $2,500 in cash to Co-Working's business bank account at the company's outset in July 2011. Getify served as Co-Working's operating manager and as the company's registered agent with the Texas Secretary of State. Unlike Getify, however, Co-Working did not achieve success; the business was not able to cover its expenses and it ultimately failed.

## II.  *Years at Issue*

### A.  *Tax Year 2011*

Mr. and Mrs. Simpson timely filed a joint Form 1040 for their taxable year 2011. The return included Schedule E, Supplemental Income and Loss, with respect to petitioners' involvement in Getify and Co-Working. Mr. and Mrs. Simpson reported losses of $47,950 from Getify and $12,541 from Co-Working, for a total loss of $60,491, as reflected on their respective Schedules K–1, Shareholder's Share of Income, Deductions, Credits, etc.

On its Form 1120–S, U.S. Income Tax Return for an S Corporation, for taxable year 2011, Getify reported $6,450 in gross receipts (line 1b); $297 in interest expenses (line 13); $15,510 in

[*4] depreciation expenses (line 14); $3,343 in advertising expenses (line 16); and $35,250 in "other deductions" (line 19). The "other deductions" reported on line 19 were itemized as follows:

| Expense | Amount |
|---|---|
| Auto and Truck | $5,140 |
| Bank Charges | 372 |
| Gifts | 2,800 |
| Meals | 4,200 |
| Office Expense | 252 |
| Postage | 100 |
| Supplies | 1,713 |
| Telephone[3] | 6,904 |
| Travel | 2,090 |
| Home Office Rent[4] | 5,630 |
| Professional Education | 161 |
| Domain | 288 |
| Medical Expenses | 5,600 |

B.    *Tax Year 2012*

Mr. and Mrs. Simpson filed a joint Form 1040 for their taxable year 2012 on August 12, 2014.[5] It included a Schedule E with respect to petitioners' involvement in Getify. Mr. and Mrs. Simpson reported income of $57,910 from Getify, as reflected on their respective Schedules K–1.

On its 2012 Form 1120–S, Getify reported $114,576 in gross receipts (line 1a); $5,210 in cost of goods sold (line 2); $6,359 in other ordinary loss (line 5); $4,210 in interest expenses (line 13); and $40,887 in "other deductions" (line 19). The "other deductions" reported on line 19 were itemized as follows:

[3] Petitioners included their home internet expenses within the "Telephone" expense item for each of the taxable years at issue.

[4] In the Stipulations of Facts, the parties have chosen to recharacterize this item as a "business use of the home" expense for each of the taxable years at issue.

[5] There is conflicting evidence in the record regarding the filing date, but the parties stipulated a filing date of August 12, 2014. As discussed *infra* note 24, we will hold the parties to the stipulation.

**[*5]**

| Expense | Amount |
|---|---|
| Accounting | $600 |
| Auto and Truck | 4,242 |
| Bank Charges | 369 |
| Dues and Subscriptions | 797 |
| Miscellaneous | 825 |
| Office Expense | 180 |
| Outside Service | 12,052 |
| Postage | 189 |
| Supplies | 385 |
| Telephone | 6,808 |
| Travel | 9,125 |
| Home Office Rent | 5,315 |

For taxable year 2012, Getify also reported an ordinary loss of $6,360 and a section 1231 loss of $19,701, both of which were associated with its alleged partnership interest in Co-Working.

C. *Tax Year 2013*

Mr. and Mrs. Simpson filed a joint Form 1040 for their taxable year 2013. The return was filed on April 28, 2015.[6] The return included a Schedule E with respect to petitioners' involvement in Getify. Mr. and Mrs. Simpson reported income of $114,162 from Getify, as reflected on their respective Schedules K–1.

On its 2013 Form 1120–S, Getify reported $192,849 in gross receipts (line 1a); $200 in advertising expenses (line 16); and $78,488 in "other deductions" (line 19). The "other deductions" reported on line 19 were itemized as follows:

---

[6] There is conflicting evidence in the record regarding the filing date, but the parties stipulated a filing date of April 28, 2015. As discussed *infra* Opinion Part VI, we will hold the parties to their stipulation.

6

| Expense | Amount |
|---|---|
| Accounting | $500 |
| Auto and Truck | 5,415 |
| Bank Charges | 3,450 |
| Dues and Subscriptions | 4,403 |
| Insurance | 144 |
| Legal and Professional Fees | 96 |
| Meals | 1,446 |
| Miscellaneous | 637 |
| Office | 1,364 |
| Postage | 367 |
| Supplies | 12,083 |
| Telephone | 236 |
| Travel | 35,627 |
| Home Office Rent | 5,271 |
| Mobile Phone | 4,418 |
| "Multi Media" | 3,031 |

III.    *Examination and Notices of Deficiency*

In 2012, the IRS began an investigation of Spectrum Financial (Spectrum), the provider of tax services that prepared Getify's corporate returns and petitioners' personal returns. The IRS' investigation of Spectrum encompassed examinations of Spectrum's clients' returns, including Getify's corporate returns and petitioners' personal returns. Co-Working's returns were not selected for audit. Upon conclusion of the examinations, the IRS issued to petitioners two notices of deficiency, both dated May 3, 2016.

The first notice of deficiency, regarding taxable years 2011 and 2012, showed that respondent determined deficiencies in federal income tax of $12,874 and $18,866, respectively. Respondent also determined accuracy-related penalties under section 6662(a) of $2,575 and $3,773 for taxable years 2011 and 2012, respectively, as well as a failure-to-timely-file addition to tax under section 6651(a)(1) of $4,967 for taxable year 2012.

The second notice of deficiency, regarding taxable year 2013, showed that respondent determined a deficiency in federal income tax of $18,539. Respondent also determined an accuracy-related penalty under section 6662(a) of $3,672 and a failure-to-timely-file addition to tax under section 6651(a)(1) of $4,590.

[*7] IV.    *Amounts Still in Dispute*

The parties have settled many of the originally disputed items. After concessions, the parties now primarily dispute whether petitioners' claimed deductions are properly reportable on Getify's Forms 1120–S or on petitioners' Schedules A of Forms 1040.[7] Consequently, the following items are still in dispute for the 2011, 2012, and 2013 taxable years:

| *2011* | | | | |
|---|---|---|---|---|
| *Expenses (and Losses)* | *Per Return* | *Per Notice of Deficiency* | *Respondent's Position at Trial* | *Petitioners' Position at Trial* |
| Auto & Truck – Getify 1120S (Schedule E) | $5,140 | -0- | -0- | $5,001 |
| Auto & Truck (Schedule A) | -0- | -0- | $5,001 | -0- |
| Telephone & Internet – Getify 1120S (Schedule E) | 6,904 | -0- | 1,648 | 4,968 |
| Telephone & Internet (Schedule A) | -0- | -0- | 2,786 | -0- |
| Travel – Getify 1120S (Schedule E) | 2,090 | $2,090 | 4,456 | 5,954 |
| Travel (Schedule A) | -0- | -0- | 1,034 | -0- |
| Business Use of the Home | 5,630 | -0- | -0- | 2,586 |
| Co-Working (Ordinary Loss) | (12,541) | -0- | (2,642) | (12,541) |
| § 6662(a) Accuracy-Related Penalty | N/A | 2,575 | 2,575 | -0- |

---

[7] The parties also disagree as to (1) whether some of petitioners' reported expenses have been adequately substantiated, *see infra* Opinion Part III.C, (2) whether Getify had a sufficient basis in Co-Working to justify petitioners' reported ordinary and section 1231 losses from that business, *see infra* Opinion Part IV, and (3) whether petitioners are liable for penalties imposed under section 6662(a) and additions to tax imposed under section 6651(a)(1), *see infra* Opinion Parts V and VI.

| [*8] | 2012 | | | |
|---|---|---|---|---|
| *Expenses (and Losses)* | *Per Return* | *Per Notice of Deficiency* | *Respondent's Position at Trial* | *Petitioners' Position at Trial* |
| Accounting | $600 | -0- | -0- | $600 |
| Telephone & Internet – Getify 1120S (Schedule E) | 6,808 | -0- | $886 | 3,714 |
| Telephone & Internet (Schedule A) | -0- | -0- | 2,524 | -0- |
| Business Use of the Home – Getify 1120S (Schedule E) | 5,315 | -0- | -0- | 2,500 |
| Business Use of the Home (Schedule A) | -0- | -0- | 1,875 | -0- |
| Co-Working (Section 1231 Loss) | (19,701) | -0- | -0- | (19,701) |
| § 6662(a) Accuracy-Related Penalty | N/A | $3,773 | 3,773 | -0- |
| § 6651(a)(1) Failure-to-Timely-File Addition to Tax | N/A | 4,967 | 4,967 | -0- |

| | 2013 | | | |
|---|---|---|---|---|
| *Expenses (and Losses)* | *Per Return* | *Per Notice of Deficiency* | *Respondent's Position at Trial* | *Petitioners' Position at Trial* |
| Accounting | $500 | -0- | -0- | $600 |
| Meals – Getify 1120S (Schedule E) | 1,446 | -0- | -0- | 231 |
| Meals (Schedule A) | -0- | -0- | $231 | -0- |
| Telephone & Internet – Getify 1120S (Schedule E) | 4,418 | -0- | -0- | 3,649 |
| Telephone & Internet (Schedule A) | -0- | -0- | 2,971 | -0- |
| Business Use of the Home – Getify 1120S (Schedule E) | 5,271 | -0- | -0- | 2,620 |
| Business Use of the Home (Schedule A) | -0- | -0- | 2,620 | -0- |
| § 6662(a) Accuracy-Related Penalty | N/A | $3,672 | 3,672 | -0- |
| § 6651(a)(1) Failure-to-Timely-File Addition to Tax | N/A | 4,590 | 4,590 | -0- |

**[\*9]**                                    OPINION

I.      *Burden of Proof*

The determinations in a notice of deficiency bear a presumption of correctness, *see, e.g.*, *Welch v. Helvering*, 290 U.S. 111, 115 (1933), and the taxpayer generally bears the burden of proving them erroneous in proceedings in this Court, *see* Rule 142(a)(1). While section 7491(a)(1) provides that, in general, when "a taxpayer introduces credible evidence with respect to any factual issue relevant to ascertaining the liability of the taxpayer for any tax imposed by subtitle A or B, the [Commissioner] shall have the burden of proof with respect to such issue," petitioners did not argue that the burden of proof should be shifted to respondent and failed to introduce sufficient evidence to shift the burden to respondent. Accordingly, section 7491(a) does not apply.

II.     *Deductions, Generally*

Section 162(a) permits a deduction for ordinary and necessary expenses paid to carry on a trade or business during the taxable year. An "ordinary" expense is one that is common and acceptable in the particular business. *Welch v. Helvering*, 290 U.S. at 113–14. Moreover, the main function of the word "ordinary" in section 162(a) is to clarify the distinction between currently deductible and capital expenses. *Commissioner v. Tellier*, 383 U.S. 687, 689–90 (1966). A "necessary" expense under section 162(a) is an expense that is appropriate and helpful in carrying on the trade or business. *Heineman v. Commissioner*, 82 T.C. 538, 543 (1984).

Deductions are a matter of legislative grace, and the taxpayer bears the burden of clearly showing entitlement to any deduction claimed. *INDOPCO, Inc. v. Commissioner*, 503 U.S. 79, 84 (1992). Under that burden, the taxpayer must substantiate the amount and the purpose of the expense underlying the deduction. *Higbee v. Commissioner*, 116 T.C. 438, 440 (2001). A taxpayer must also maintain adequate records to demonstrate the propriety of any deduction claimed. *Id.*; *see also* § 6001.

Certain expenses otherwise deductible under section 162(a) are subject to heightened substantiation requirements under section 274(d); these include expenses for traveling and expenses with respect to any listed property under section 280F(d)(4). *See* § 274(d)(1), (4). No deduction is permitted for personal, living, or family expenses unless expressly permitted under the Code. *See* § 262(a).

**[\*10]** If a taxpayer is unable to substantiate the amount of a deduction, the Court may nonetheless allow it (or a portion thereof) if there is an evidentiary basis for doing so. *See Cohan v. Commissioner*, 39 F.2d 540, 543–44 (2d Cir. 1930); *Vanicek v. Commissioner*, 85 T.C. 731, 742–43 (1985). In estimating the amount of an allowable expense under the *Cohan* rule, the Court bears heavily against the taxpayer whose inexactitude is of his own making. *Cohan v. Commissioner*, 39 F.2d at 544. The *Cohan* rule cannot be applied to deductions subject to the strict substantiation requirements of section 274(d). *See Sanford v. Commissioner*, 50 T.C. 823, 828 (1968), *aff'd per curiam*, 412 F.2d 201 (2d Cir. 1969); Temp. Treas. Reg. § 1.274-5T(a) (flush language).

With these general principles in mind, we will address the correctness of petitioners' claimed deductions associated with Getify and their purported losses associated with Co-Working.

III.  *Expenses Associated with Getify*

A.  *Character of Expenses*

A corporation is treated as a separate entity from its shareholders for tax purposes. *Moline Props., Inc. v. Commissioner*, 319 U.S. 436, 438–39 (1943). While a shareholder may identify his interest and business with those of the corporation, they are legally distinct and, ordinarily, if he voluntarily pays or guarantees the corporation's obligations, his expense may not be deducted on his personal return. *Deputy v. du Pont*, 308 U.S. 488, 494 (1940); *Noland v. Commissioner*, 269 F.2d 108, 111 (4th Cir. 1959), *aff'g* T.C. Memo. 1958-60. Such payments, absent any fixed obligation for repayment, are generally regarded as a contribution to the capital of a corporation and are deductible, if at all, by the corporation. *Rink v. Commissioner*, 51 T.C. 746, 751 (1969). However, a corporate resolution or policy requiring a corporate officer to assume certain expenses indicates that those expenses are his rather than the corporation's. *Noyce v. Commissioner*, 97 T.C. 670, 683–84 (1991).

It is common in cases such as this for a taxpayer to improperly claim deductions on his individual return with respect to expenses that are properly classified as corporate. *See, e.g.*, *Noland v. Commissioner,* 269 F.2d at 110; *Rink*, 51 T.C. at 748–50. But petitioners argue that their reported expenses are properly deductible by their wholly owned S corporation, Getify, rather than by them. Respondent argues that the expenses are properly classified as unreimbursed employee expenses

**[\*11]** and should be treated as itemized deductions that are reportable on Schedules A of petitioners' Forms 1040.

Indeed, this Court has frequently held that being an employee constitutes a trade or business in and of itself, *see Primuth v. Commissioner*, 54 T.C. 374, 377 (1970), and that shareholders of a corporation may also be engaged in the trade or business of being an employee, *see, e.g.*, *Winslow v.* Commissioner, T.C. Memo. 1983-158, 45 T.C.M. (CCH) 1064, 1067 (stating that the Commissioner's argument that a taxpayer "cannot be in the trade or business of being the employee of a corporation that he also owns is obviously without merit" since, for instance, the Court "must from time to time determine whether a bad debt is related to a taxpayer's trade or business of being an employee where he is also a shareholder of the corporation"). Expenses of employment, if incurred under a reimbursement arrangement, are deductible in computing the employee's gross income. *See* § 62(a)(2)(A). Employees that have unreimbursed expenses associated with their employment may deduct those expenses only as miscellaneous itemized deductions subject to the two-percent limitation of section 67(a). *See* § 67(b). However, to the extent that any expenses are incurred to protect a shareholder-employee's equity interest, those expenses are to be capitalized and are not deductible to the taxpayer in his capacity as an employee. *Craft v. Commissioner*, T.C. Memo. 2005-197, 2005 WL 2078513, at \*3. The character of such expenses—that is, whether they were incurred to protect the shareholder-employee's equity interest or incurred as ordinary and necessary expenses associated with the shareholder's employment with the entity—depends on the facts and circumstances of a given case. *See Deputy v. du Pont*, 308 U.S. at 496; *see also United States v. Generes*, 405 U.S. 93, 99 (1972).

Once again, the primary purpose of the word "ordinary" in section 162(a) is to clarify the distinction between expenses that are currently deductible and those that are capital. *Commissioner v. Tellier*, 383 U.S. at 689–90. An expenditure must be capitalized when it (1) creates or enhances a separate and distinct asset, (2) produces a significant future benefit, or (3) is incurred "in connection with" the acquisition of a capital asset such that it is directly related to the acquisition. *Lychuk v. Commissioner*, 116 T.C. 374, 385–86 (2001).

**[\*12]** In this case, without regard to any specific tax year, the following categories of expenses are at issue:[8] (1) auto and truck; (2) travel; (3) meals; (4) accounting; (5) telephone and internet; and (6) business use of the home.[9] While it is arguable that these expenses were incurred in connection with the advancement of Getify generally, petitioners have not proven (nor have they attempted to prove) that the expenses were incurred specifically for the purpose of acquiring or creating a capital asset or to produce a significant future benefit;[10] instead, the expenses seem merely incidental to the nature of the business itself. *See id.*; *see also INDOPCO, Inc. v. Commissioner*, 503 U.S. at 87. To the extent that any benefit was created by virtue of petitioners' incursion of the expenses, it appears to us that such benefit had a more immediate effect. *See D'Angelo v. Commissioner*, T.C. Memo. 2003-295, 2003 WL 22413231, at \*8. For example, petitioners appear to have incurred their telephone expenses for the purpose of effectuating instant communication between themselves and others, irrespective of the purpose of the communication. Similarly, petitioners' accounting expenses were incurred for the purpose of filing their tax returns rather than for the purpose of procuring advice associated with the acquisition of a capital asset. Accordingly, all the expenses at issue are properly

---

[8] These categories of expense are at issue with respect to the party that is rightfully entitled to the deduction (i.e., petitioners in their individual capacity or Getify, petitioners' wholly owned S corporation). As laid out further *infra* note 17, the parties have stipulated that petitioners have adequately substantiated $5,001 for their auto and truck expenses for taxable year 2011, $231 for their meals expenses for taxable year 2013, and $2,620 for their "business use of the home" expenses for taxable year 2013.

[9] Each of the expense categories is at issue for at least one of the years at issue (i.e., 2011, 2012, or 2013), but they are not all at issue for each year.

[10] Petitioners cite *Cox v. Commissioner*, T.C. Memo. 2001-196, 2001 WL 848658, for the proposition that a taxpayer may increase his basis in an S corporation if he makes an economic outlay to or for the benefit of the S corporation. However, petitioners fail to acknowledge, in pertinent part, that an "economic outlay for this purpose is an *actual contribution of cash or property by the shareholder to the S corporation* or a *transaction that leaves the S corporation indebted to the shareholder.*" *Id*. at \*4 (emphasis added). With respect to the expenses at issue, petitioners did not make an actual contribution of cash or property to Getify. Moreover, there is nothing in the record to indicate that Mr. Simpson and Getify entered into any loan agreement, nor does any distribution by Getify to petitioners during the taxable years at issue directly reflect the existence of such an agreement. Accordingly, petitioners' basis in Getify was not increased by voluntarily undertaking these expenses.

**[\*13]** characterized as ordinary expenses rather than capital expenditures.[11]

Further, it is evident that the expenses at issue, given their ordinary nature, were not incurred for the purpose of protecting Mr. Simpson's shareholder interest in Getify. *See du Pont*, 308 U.S. at 496; *Craft v. Commissioner*, 2005 WL 2078513, at \*3. Instead, it appears they were incurred to help[12] Mr. Simpson in carrying on his trade or business as an *employee* of Getify. *See O'Malley*, 91 T.C. at 363–64. Consequently, all of the expenses at issue should be properly characterized as ordinary and necessary employee expenses.[13] Since they are employee expenses,

---

[11] While we acknowledge that the disjunctive test used to determine whether an expenditure *must* be capitalized (delineated in *Lychuk*, 116 T.C. at 385–86) is not absolute, the test is nevertheless a helpful tool in assessing the distinctions between the types of expenditures that are capital and those that are currently deductible. *See, e.g.*, *Shiekh v. Commissioner*, T.C. Memo. 2010-126 (holding that travel expenses incurred by a taxpayer who was investigating potential properties for acquisition must be capitalized, even though the taxpayer did not acquire the properties); *D'Angelo v. Commissioner*, 2003 WL 22413231 (holding that legal fees incurred in defense of a taxpayer's business practices rather than to create a separate or distinct asset, produce a significant future benefit, or acquire a capital asset, were ordinary expenses and currently deductible); *Winter v. Commissioner*, T.C. Memo. 2002-173 (holding that legal and appraisal fees arising from the acquisition of a hotel are not currently deductible and should have been capitalized). Through this lens, we find that the relevant expenditures in the instant case are ordinary rather than capital in nature. *But see Koree v. Commissioner*, 40 T.C. 961, 965–66 (1963) (holding that a taxpayer who, as majority shareholder, paid rent obligations on behalf of a corporation, was not carrying on a trade or business and only made the rent payments to enhance his interest in a different, related entity that directly benefited from the success of the corporation; because the payments were made to enhance his interest in the related entity, the expenditures were required to be capitalized). The context of the taxpayer's expenditures in *Koree* is not analogous to the instant case; Mr. Simpson did not incur the expenses at issue to enhance his interest in Getify, but rather to make providing services to Getify more convenient. Therefore, *Koree* is distinguishable.

[12] For an expense to be deductible under section 162(a), it must also be "necessary." Once again, a "necessary" expense is one that is appropriate and helpful in carrying on a trade or business. *Heineman*, 82 T.C. at 543. The record clearly indicates that the expenses incurred by Mr. Simpson that are at issue were appropriate and helpful in carrying out his duties as an employee of Getify. *See id.*; *see also O'Malley v. Commissioner*, 91 T.C. 352, 363–64 (1988); *Craft v. Commissioner*, 2005 WL 2078513, at \*3.

[13] Notwithstanding this analysis, this Court has previously allowed a taxpayer to report mileage deductions for the use of a personal vehicle as a business expense of a wholly owned S corporation on the S corporation's Form 1120S. Consequently, such expense flows through to the taxpayer's Schedule E. *See Powell v. Commissioner*, T.C. Memo. 2016-111, *aff'd*, 689 F. App'x 763 (4th Cir. 2017). The instant case is very

**[\*14]** the next query we must answer to assess their deductibility is whether the expenses were reimbursed under an accountable plan. *See* § 62(a)(2)(A).

      B.    *Lack of an Accountable Plan*

Under section 62(a)(2)(A), an employee can deduct certain expenses incurred in connection with the performance of services for an employer under a reimbursement or other allowance arrangement. If these expenses are reimbursed by the employer pursuant to an "accountable plan," then the reimbursed amount is excluded from income and is not considered wages or compensation. Treas. Reg. § 1.62-2(c)(4). To qualify as an accountable plan, such a plan must meet the requirements of Treasury Regulation § 1.62-2(d)-(f), which, in pertinent part, provides:

(d) Business connection—

    (1) In general.— . . . [A]n arrangement meets the requirements of this paragraph (d) if it provides advances, allowances . . . , or reimbursements only for business expenses that are allowable as deductions by part VI (section 161 and the following), subchapter B, chapter 1 of the Code, and that are paid or incurred by the employee in

---

similar but distinguishable. For one, it does not appear that the Commissioner in *Powell* raised the issue of which party (i.e., the individual taxpayer or the S corporation) was entitled to the deduction. Instead, the primary issue in that case was whether the taxpayer substantiated the items underlying the deductions claimed. In the instant case, however, both respondent and petitioners agree that petitioners have substantiated $5,001 associated with the business use of their personal vehicles for taxable year 2011.

The parties here disagree about *who* is entitled to the deduction. In assessing the analogy between *Powell* and the instant case, we consider the arguments advanced by the parties in each case. *See United States v. Sineneng-Smith*, 140 S. Ct. 1575 (2020); *Greenlaw v. United States*, 554 U.S. 237, 243 (2008) ("In our adversary system, in both civil and criminal cases, in the first instance and on appeal, we follow the principle of party presentation. That is, we rely on the parties to frame the issues for decision and assign to courts the role of neutral arbiter of matters the parties present."). Though we have indicated in dicta that the party presentation principle necessarily gives us wide latitude in the deficiency context, *901 S. Broadway Ltd. P'ship v. Commissioner*, T.C. Memo. 2021-132, it does not appear that the issue argued before us in the instant case was presented to this Court in *Powell*. Accordingly, we find that case distinguishable. Thus, it would be inappropriate to extend the logic from *Powell* to the instant case.

**[*15]** connection with the performance of services as an employee of the employer. . . .

. . . .

(e) Substantiation—

(1) In general. An arrangement meets the requirements of this paragraph (e) if it requires each business expense to be substantiated to the payor in accordance with paragraph (e)(2) or (e)(3) of this section, whichever is applicable, within a reasonable period of time. . . .

(2) Expenses governed by section 274(d). An arrangement that reimburses travel, entertainment, use of a passenger automobile or other listed property, or other business expenses governed by section 274(d) meets the requirements of this paragraph (e)(2) if information sufficient to satisfy the substantiation requirements of section 274(d) and the regulations thereunder is submitted to the payor. . . .

(3) Expenses not governed by section 274(d). An arrangement that reimburses business expenses not governed by section 274(d) meets the requirements of this paragraph (e)(3) if information is submitted to the payor sufficient to enable the payor to identify the specific nature of each expense and to conclude that the expense is attributable to the payor's business activities. . . .

(f) Returning Amounts In Excess Of Expenses—

(1) In general. . . . [A]n arrangement meets the requirements of this paragraph (f) if it requires the employee to return to the payor within a reasonable period of time any amount paid under the arrangement in excess of the expenses substantiated in accordance with paragraph (e) of this section. The determination of whether an arrangement requires an employee to return amounts in excess of substantiated expenses will depend on the facts and circumstances.

**[\*16]** Section 62(c) further clarifies that an arrangement will *not* be treated as a reimbursement or other expense allowance arrangement for purposes of section 62(a)(2)(A) if it (1) does not require the employee to substantiate the expenses covered by the arrangement to the person providing reimbursement or (2) provides the employee the right to retain any amount in excess of the substantiated expenses covered under the arrangement.

At trial, Ruth Hancock (Ms. Hancock), vice president of Spectrum and Mr. Simpson's sister, testified that Getify had an unwritten accountable plan. Similarly, Mr. Simpson affirmed in his testimony that, although he may have discussed an accountable plan with his accountants, Getify "did not have any formal thing." While an accountable plan does not necessarily have to be in writing,[14] there must be, at the very least, *some* extrinsic evidence that indicates that such a plan exists.[15] For example, if petitioners engaged in a formal process whereby they collected all relevant documentation to substantiate the purported expenses and then reimbursed themselves from the corporate account with the exact amounts associated with the expenses, such evidence *might* be sufficient to corroborate the existence of an unwritten accountable plan.[16] The record here notably lacks any such occurrence.

---

[14] Under Treasury Regulation § 1.62-2(c), an accountable plan qualifies as a "reimbursement or other expense allowance arrangement" if it meets the requirements of paragraphs (d), (e), and (f) of the regulation. None of those paragraphs requires that such an arrangement be in writing. *See* Treas. Reg. § 1.62-2(d)-(f). Under the omitted-case semantic canon, nothing is to be added to what a text states or reasonably implies; that is, a matter not covered is to be treated as not covered. *See* Antonin Scalia & Bryan A. Garner, *Reading Law: The Interpretation of Legal Texts* 93 (2012). Thus, the absence of text in Treasury Regulation § 1.62-2(d)–(f) requiring that an accountable plan be written leads us to conclude that there is no such requirement.

[15] This Court is not obligated to accept a petitioner's self-serving testimony. *See Tokarski v. Commissioner*, 87 T.C. 74, 77 (1986). Moreover, even when no contradictory evidence is presented by the Commissioner, we are not required to be convinced by a taxpayer's own evidence regarding his subjective intent. *Fleischer v. Commissioner*, 403 F.2d 403, 406 (2d Cir. 1968), *aff'g* T.C. Memo. 1967-85.

[16] It appears that this Court has never addressed the issue of whether (and under what circumstances) an unwritten accountable plan qualifies as a "reimbursement or other expense allowance arrangement" under Treasury Regulation § 1.62-2. We have found, however, that other sorts of reimbursement plans may exist, even if they are not written, when (1) the relevant Treasury Regulation addressing the qualification of such a plan does not have an in-writing requirement, (2) the parties involved with such a plan behave in accordance with the existence of the plan, and (3) the behavior of the parties (or extrinsic evidence) with respect to the plan is in

**[*17]** Aside from Mr. Simpson and his sister's testimony regarding their subjective intent to establish an accountable plan, there is no evidence in the record to suggest that Getify required Mr. Simpson to substantiate his expenses or return any amounts received that exceeded those expenses. *See* Treas. Reg. § 1.62-2(e). In fact, Mr. Simpson testified that with respect to instances in which he transferred money from Getify to his personal account, such occurrences could have been for a reimbursement as well as a distribution. Moreover, of the numerous documented transfers between Getify's checking account and petitioners' checking account, there are no records that identify the purpose of any specific transfer. *See id.* subpara. (3). Thus, there is no credible evidence in the record to indicate that Getify had an accountable plan that meets all the requirements of Treasury Regulation § 1.62-2(d)–(f). Petitioners have failed to meet their burden of proof.

Because petitioners failed to establish that Getify had an accountable plan that meets the requirements of Treasury Regulation § 1.62-2(d)-(f), all the expenses incurred personally by petitioners in connection with Mr. Simpson's employment with Getify, and which the parties agree have been substantiated, are considered unreimbursed employee expenses.[17] Unreimbursed employee expenses fall under the broader category of "miscellaneous itemized deductions," which are allowed only to the extent that the aggregate of such deductions exceeds

---

accordance with the requirements of the relevant Treasury Regulation. *See, e.g.*, *Giberson v. Commissioner*, T.C. Memo. 1982-338 (affirming the existence and qualification of an accident and health reimbursement plan under section 105, despite it not being written). It is worth noting that the regulation contemplated by the Court in *Giberson* explicitly states that an accident and health reimbursement plan need not be in writing, *see* Treas. Reg. § 1.105-5, whereas the regulation in the instant case does not contain such language. In any event, we do not hold that, as a matter of law, an accountable plan need not be in writing; rather, we are merely pointing out that Treasury Regulation § 1.62-2 does not specifically call for accountable plans to be in writing and that there are examples of qualifying unwritten reimbursement arrangements (albeit, in a different context) elsewhere in this Court's caselaw.

[17] Of the items that are still in dispute, the only items that the parties agree have been sufficiently substantiated (at least with respect to the amount claimed by petitioners), incurred in connection with Getify, and that we have determined to be reportable on petitioners' Schedules A are (1) the "auto and truck" expenses for taxable year 2011, (2) the "meals" expenses for taxable year 2013, as well as (3) the "business use of the home" expenses for taxable year 2013. These deductions are properly characterized as unreimbursed employee expenses and are reportable on petitioners' Schedules A. Discussion with respect to the substantiation of the amounts associated with the remaining expense items still in dispute may be found *infra* Part III.C.

**[\*18]** two percent of adjusted gross income. *See* § 67; Temp. Treas. Reg. § 1.67-1T(a). Notwithstanding any concessions made by respondent (or any agreements reached by the parties), such expenses are generally reportable on Schedule A of Form 1040.

### C.    *Substantiation*

To determine petitioners' entitlement to any deductions, we must also determine whether the underlying expenses have been substantiated. In essence, petitioners assert that they have substantiated one amount with respect to an item and respondent asserts that petitioners have either failed to substantiate any amount or, at most, substantiated a lesser amount. These items are as follows: travel expenses (taxable year 2011); accounting expenses (taxable years 2012 and 2013); telephone and internet expenses (taxable years 2011, 2012, and 2013); and business use of the home expenses (taxable years 2011 and 2012). We will take each of these expenses in turn.

### 1.    *Travel Expenses (2011)*

With respect to petitioners' travel expenses for taxable year 2011, petitioners' position at trial was that Getify was entitled to deduct $5,954. Respondent's position at trial was that Getify was entitled to deduct $4,456, which flows through to petitioners' Schedule E. Also, respondent averred that petitioners were entitled to deduct $1,034 as unreimbursed employee expenses, which falls under the category of "miscellaneous itemized deductions," is subject to the two-percent limitation under section 67(a), and is reportable on petitioners' Schedule A. By this, respondent signals that petitioners have sufficiently substantiated $5,490 worth of travel expenses for 2011. Accordingly, the parties dispute whether the discrepancy of $464 has been properly substantiated.

Travel expenses are subject to heightened substantiation requirements under section 274(d). Those requirements permit a deduction for traveling expenses only to the extent the taxpayer proves (1) the amount of each expenditure for traveling away from home, (2) the date of departure and return for each trip and the number of days spent on business, (3) the destination or locality of travel, and (4) the business reason for travel or the expected business benefit to be derived. *See* Temp. Treas. Reg. § 1.274-5T(b)(2). Each element of a traveling expense must be substantiated through "adequate records" or by "sufficient evidence corroborating the taxpayer's own statement." *See* § 274(d)

**[*19]** (flush language); *see also* Temp. Treas. Reg. § 1.274-5T(c)(1), (2), and (3).

Petitioners provided a spreadsheet of their 2011 travel expenses. The disputed expenses involve numerous small amounts associated with toll tag charges and parking fees. These expenses do not clearly correspond with the travel destinations on petitioners' travel logs. Moreover, when asked about several of these expenses at trial, Mr. Simpson did not provide testimony that corroborated the assertions made in petitioners' travel logs.

We hold that petitioners failed to satisfy their burden of substantiating the full $5,954 in travel expenses for taxable year 2011 in accordance with section 274 and the regulations promulgated thereunder. Mr. Simpson's testimony regarding the disputed spreadsheet items lacks the specificity and detail required under Temporary Treasury Regulation § 1.274-5T(c)(3)(i)(A). Accordingly, petitioners are entitled to deduct only the amounts respondent allowed.

As laid out *supra* Part III.B, the amounts paid out of petitioners' personal account(s) and not subject to an accountable plan are properly characterized as unreimbursed employee expenses. Thus, petitioners are entitled to deduct only what respondent has allowed: Getify may deduct $4,456, which flows through to petitioners' Schedule E, and petitioners are entitled to deduct $1,034 as unreimbursed employee expenses, which falls under the category of "miscellaneous itemized deductions," is subject to the two-percent limitation, and is reportable on petitioners' Schedule A.

2. *Accounting Expenses (2012 and 2013)*

With respect to petitioners' reported expenses regarding their payment of accounting fees to Spectrum, petitioners argue that Getify should be entitled to a $600 deduction for taxable year 2012, as well as another $600 deduction for taxable year 2013. Meanwhile, respondent contends that the evidence presented to the Court regarding those payments is not credible and that the deductions should be disallowed completely.

Unlike travel expenses, accounting fees are not subject to the heightened substantiation requirements of section 274(d). Thus, the Court may allow a deduction even if the taxpayer is unable to substantiate the expense, assuming there is a proper evidentiary basis for doing so. *See Cohan v. Commissioner*, 39 F.2d at 544.

[*20] At trial, both Mr. Simpson and Ms. Hancock testified that the $600 accounting fee for taxable year 2012 was paid in cash at a family gathering held in Dallas, Texas, in March 2012. They further testified that the $600 accounting fee for taxable year 2013 was paid in cash at a family gathering in January 2013. The parties also stipulated the introduction of two exhibits, purportedly invoices from Spectrum, which indicated that the accounting fees had been paid by Mr. Simpson for the preparation of petitioners' 2011 and 2012 tax returns.[18] Each invoice shows two separate charges: $470 for the preparation of Getify's corporate return and $130 for the preparation of petitioners' joint return. The invoices were stamped "PAID" on April 14, 2012, and March 13, 2013, respectively.

At trial, Ms. Hancock was asked to explain the discrepancy between the date Mr. Simpson paid the fees in cash and the date marked as paid on the invoice. Ms. Hancock testified that it "was a clerical oversight that it was marked paid on that date, but that doesn't make the receipt false." Ms. Hancock also testified that Spectrum uses a "point-of-sale system . . . through our accounting software that shows that [the invoice] is marked paid, and we [Spectrum] included that in the funds that we toted [sic] as taxable income." Spectrum did not provide any ledgers or records directly corroborating this testimony.

Mr. Simpson was also asked in the new trial why, at the original trial heard by Judge Chiechi, he did not mention that he had paid the accounting fees in cash at each of the family gatherings, to which he testified that he "didn't remember that at the time." Moreover, when asked whether Getify ever paid any other expenses in cash, Mr. Simpson testified that he put "significant amounts of cash . . . on behalf of Getify into [Co-Working]" but he did "not have the records and the bank statements to support that."

We find Mr. Simpson and Ms. Hancock's testimony regarding the cash payment of accounting expenses to be unpersuasive. The only documentary evidence petitioners put forth to substantiate the accounting expenses was two purported invoices, which indicated that the supposed payments were made at times that are not corroborated by

---

[18] The accounting expenses for the preparation of petitioners' 2011 and 2012 tax returns were allegedly incurred in taxable years 2012 and 2013, respectively (which comports with the general notion that a taxpayer's return is typically prepared in the calendar year following the taxable year associated with the return).

**[\*21]** the testimony.[19] Moreover, petitioners supposedly paid for the preparation of returns in 2012 that were not filed until 2014. This evidence is not credible. As such, we hold that petitioners failed to substantiate the $600 in accounting expenses they reported for taxable years 2012 and 2013.

3. *Telephone and Internet Expenses (2011, 2012, and 2013)*

For taxable year 2011, petitioners argue that Getify should be entitled to deduct $4,968 associated with petitioners' cell phone and home internet usage that year. This amount appears to reflect 30% of petitioners' cell phone bill and 80% of their home internet bill. Respondent contends that only $1,648 should be deductible by Getify and that $2,786 should be deductible by petitioners as unreimbursed employee expenses, subject to the two-percent limitation. The latter number reflects 30% of petitioners' phone bill and 60% of their home internet bill. In essence, respondent agrees that petitioners have substantiated at least $4,434 of their reported expenses. Accordingly, the parties dispute whether the discrepancy of $534 has been properly substantiated.

For taxable year 2012, petitioners argue that Getify should be entitled to deduct $3,714 associated with petitioners' cell phone and home internet usage that year. This amount appears to reflect 30% of petitioners' cell phone bill and 80% of their home internet bill. On the other hand, respondent contends that only $886 should be deductible by Getify and that $2,524 should be deductible by petitioners as unreimbursed employee expenses, subject to the two-percent limitation. The latter number reflects 30% of petitioners' phone bill and 60% of their home internet bill. Thus, respondent agrees that petitioners have substantiated at least $3,410 of their reported expenses. Accordingly,

---

[19] Moreover, the invoices suggest that only $470 of each $600 charge was dedicated to preparing Getify's corporate return. Petitioners contend that each $130 payment dedicated to the preparation of their personal returns should also be deducted by Getify in its corporate capacity. However, in light of the foregoing conclusion, it is not necessary for us to decide whether fees paid for the preparation of a taxpayer's individual return may be deductible by the taxpayer's business. In fact, judicial restraint counsels us not to do so. *See PDK Lab'ys Inc. v. DEA*, 362 F.3d 786, 799 (D.C. Cir. 2004) (Roberts, J., concurring in part and concurring in judgment) ("[I]f it is not necessary to decide more, it is necessary not to decide more . . . .").

[*22] the parties dispute whether the discrepancy of $304 has been properly substantiated.

Finally, for taxable year 2013, petitioners argue that Getify should be entitled to deduct $3,649 associated with petitioners' cell phone and home internet usage that year. This number appears to reflect 30% of petitioners' cell phone bill and 80% of their home internet bill. Respondent contends that Getify is not entitled to any deduction associated with those expenses for 2013 and that petitioners may deduct $2,971 as unreimbursed employee expenses, subject to the two-percent limitation. This amount reflects 30% of petitioners' phone bill and 60% of their home internet bill. Accordingly, the parties dispute whether the discrepancy of $678 has been substantiated.

As a preliminary matter, these expenses are subject to the analysis *supra* Part III.A and B. Therefore, to the extent that we find that petitioners have substantiated their expenses beyond what respondent has allowed, any additional expense amounts will be deductible only as unreimbursed employee expenses (to the extent the deductions exceed two percent of petitioners' adjusted gross income). In this respect, petitioners' deduction of telephone and internet expenses *at the corporate level* is limited to what respondent has conceded. Moreover, since the parties agree that 30% of petitioners' cell phone bill is deductible and disagree only as to the proper placement of that deduction on petitioners' tax returns, that issue has already been resolved in favor of respondent in light of our analysis *supra* Part III.A and B. Thus, the issue that remains is whether petitioners are entitled to deduct either 60% or 80% of their home internet usage as unreimbursed employee expenses, subject to the 2% limitation of section 67(a).

Internet services do not fall under the definition of listed property under section 280F(d)(4) and are not subject to the heightened substantiation requirements of section 274(d). Consequently, the Court may allow a deduction (or a portion thereof) even if the taxpayer is unable to substantiate it, so long as there is a sufficient evidentiary basis for doing so. *See Cohan v. Commissioner*, 39 F.2d at 544. In estimating the amount of an allowable expense under *Cohan*, however, the Court weighs heavily against the taxpayer whose inexactitude is of his own making. *Id.* Furthermore, section 262(a) expressly provides that no deductions are allowed for personal, living, or family expenses.

**[\*23]** In taxable year 2011, Mr. Simpson was not engaged in work for only Getify but was also employed by other entities and performed services for Co-Working. Mr. Simpson discontinued his employment with two of his employers during that year. At the start of taxable year 2012, Mr. Simpson continued his work with Getify, Co-Working, and the other employer[20] but ultimately discontinued his work for the latter two at different points in the year. In any event, Mr. Simpson used his home internet service in his work for the other entities, as he testified that he would do at least *some* work for them from petitioners' home.

Mr. Simpson testified that petitioners' family would occasionally watch movies and television shows via the internet on Mrs. Simpson's personal laptop but that such occurrences were infrequent. Mr. Simpson also testified that both he and his wife "definitely had [a] Facebook account" during the years at issue and that Mrs. Simpson "participated in Facebook groups with other new parents" following the birth of their youngest child. Furthermore, Mr. Simpson testified that petitioners' oldest child would use "personal devices" in the home during the years at issue with unrestricted access to games and streaming services. Petitioners did not maintain any records allocating the internet usage between Mr. Simpson's work for Getify, the employers, Co-Working, or the family's personal use.

Ultimately, there is nothing in the record that explains why petitioners should be entitled to deduct 80% of their home internet expense instead of 60%. In fact, it is evident from the record that there were other uses of the home internet service aside from Mr. Simpson's work for Getify. Petitioners' inexactitude is of their own making, *see Cohan v. Commissioner*, 39 F.2d at 544, and they have failed to meet their burden. Thus, petitioners' deduction for home internet expenses is limited to what respondent has allowed.

### 4. *Business Use of the Home (2011 and 2012)*

For taxable year 2011, petitioners argue that Getify should be entitled to deduct $2,586 related to Getify's business use of the home. Respondent's position at trial for taxable year 2011 is that petitioners are not entitled to any deduction related to the business use of the home.

---

[20] See *infra* Part III.C.4 regarding discussion of Mr. Simpson's work for Zynga in taxable year 2012.

**[\*24]** For taxable year 2012, petitioners contend that Getify should be entitled to deduct $2,500 associated with Getify's business use of the home. Respondent's position at trial was that petitioners are entitled to deduct only $1,875 as unreimbursed employee expenses. Accordingly, the parties dispute whether the discrepancy of $625 has been substantiated.

Once again, as a preliminary matter, these expenses are subject to the analysis *supra* Part III.A and B. Therefore, to the extent that we find that petitioners have substantiated their expenses beyond what respondent has allowed, any additional expenses will be deductible only as unreimbursed employee expenses, subject to the two-percent limitation.

As a general rule, taxpayers are unable to claim deductions with respect to the business use of a dwelling unit that is used by the taxpayer as a residence during the taxable year. § 280A(a). However, section 280A(c)(1)(A) provides an exception to the general rule to the extent that a taxpayer, on a regular basis, uses a portion of the dwelling unit *exclusively* as the principal place of business for any trade or business of the taxpayer. The term "dwelling unit" includes houses. § 280A(f)(1)(A).

Before trial, the parties stipulated that petitioners' residence is 1,891 square feet and that 198 square feet (10.5%) of the residence was used as Getify's principal place of business during the years at issue. The parties also stipulated that, at most, the business' portion of the rent, home insurance, and utilities for the taxable years at issue would be deductible (stipulated expenses). For taxable year 2011, 10.5% of the stipulated expenses totals $2,610. For taxable year 2012, 10.5% of the stipulated expenses totals $2,500.

During taxable year 2011, Mr. Simpson was not working exclusively for Getify; he also performed services for three other employers and Co-Working. At trial, Mr. Simpson testified that it was customary for him to do work associated with two of the other entities from the couch because he wanted to be around his family and that the office was used exclusively for his work with Getify. We do not find this testimony credible. Consequently, we hold that the disputed portion of the dwelling unit was not used exclusively for Getify. Thus, this expense does not fall under the exception of section 280A(c)(1), and petitioners are not entitled to deduct the business use of the home expenses for the 2011 taxable year.

[*25] During taxable year 2012, Mr. Simpson was not working exclusively for Getify, as he also performed services on behalf of Co-Working and another employer. On posttrial brief, respondent indicated that the reason for the reduction for the allowable deduction associated with the stipulated expenses for 2012 from $2,500 to $1,875 was the "months when [Mr. Simpson] worked at home for an employer." Although Mr. Simpson also worked for Zynga for part of the 2012 taxable year, he testified that his work for Zynga "was not done at [his] house at all because Zynga has a physical office," that he did "virtually all of [his] work for Zynga at their physical office location," and furthermore that he "couldn't recall any work done for Zynga from home." We find this testimony credible.

Given that respondent's adjustment appears to be based on Mr. Simpson's work for Zynga, we will treat this as a partial concession. Thus, we hold that Mr. Simpson used his home office exclusively in his work with Getify in taxable year 2012 and that petitioners are entitled to a $2,500 deduction for their business use of the home. However, this deduction is still subject to our analysis *supra* Part III.A and B, and we therefore hold that this expense is properly classified as an unreimbursed employee expense, subject to the two-percent limitation, and reportable only on petitioners' Schedule A for taxable year 2012.

D.   *Summary*

In sum, we hold that petitioners' S corporation, Getify, may deduct only the specific expenses that respondent has expressly allowed. Moreover, except for the business use of the home expenses for taxable year 2012, petitioners are entitled to deduct only their unreimbursed employee expenses to the extent respondent allowed, subject to the two-percent limitation contained in section 67(a).

IV.   *Basis in Co-Working and Associated Losses*

We must also determine whether petitioners have established that Getify, as a partner in Co-Working, had a sufficient basis to justify the share of Co-Working's ordinary and section 1231 losses it deducted, as reflected on petitioners' tax returns for taxable years 2011 and 2012. Petitioners argue that (1) they, on Getify's behalf, made capital contributions to Co-Working beyond those respondent agrees have been substantiated and (2) the other members of the Co-Working venture intended to make gifts of portions of their interests in Co-Working to Getify and that their intentions are reflected in the equal distribution of

**[\*26]** partnership loss reflected on Co-Working's tax returns and the partners' Schedules K–1 for 2011 and 2012.

Co-Working is a limited liability company (LLC) organized under the laws of Texas and is treated as a partnership for federal tax purposes. *See* Treas. Reg. § 301.7701-3(b). Generally, a partner's distributive share of income, gain, loss, deduction, or credit shall be determined by the partnership agreement. § 704(a). However, a partner's distributive share of partnership loss (including capital loss) is allowed only to the extent of the adjusted basis of the partner's interest in the partnership at the end of the year in which such loss occurred, and any excess of such loss over the partner's adjusted basis shall be allowed as a deduction at the end of the partnership year in which such excess is repaid to the partnership. § 704(d).

A partner's adjusted basis in a partnership is generally determined under section 705(a)(1), which provides that the partner's basis shall be the basis determined under section 722 or section 742 and shall be increased by the sum of the partner's distributive share of "(A) taxable income of the partnership as determined under section 703(a), (B) income of the partnership exempt from tax under this title, and (C) the excess of the deductions for depletion over the basis of the property subject to depletion." Moreover, the partner's adjusted basis shall be decreased by distributions by the partnership as well as the partner's distributive share for the taxable years and prior taxable years of "(A) losses of the partnership, and (B) expenditures of the partnership not deductible in computing its taxable income and not properly chargeable to capital account." § 705(a)(2).

Section 722 provides:

> The basis of an interest in a partnership acquired by a contribution of property, including money, to the partnership shall be the amount of such money and the adjusted basis of such property to the contributing partner at the time of the contribution increased by the amount (if any) of gain recognized under section 721(b) to the contributing partner at such time.

To be clear, a partner's adjusted basis is not determined solely by his initial contribution; subsequent contributions of property also increase a partner's adjusted basis. *See id.*; *see also Nwabasili v. Commissioner*, T.C. Memo. 2016-220, at \*16; *Haff v. Commissioner*, T.C. Memo.

**[\*27]** 2015-138, at \*5; *Webster v. Commissioner*, T.C. Memo. 1982-427, 1982 WL 10720.

Alternatively, section 742 provides that the "basis of an interest in a partnership acquired other than by contribution shall be determined under part II of subchapter O (sec. 1011 and following)." Under section 1015, the basis of property acquired by gift is the same in the hands of the donee as it would be in the hands of the donor, unless the donor's basis is "greater than the fair market value of the property at the time of the gift," in which case the donee's basis shall be the fair market value of the property for the purpose of determining loss. *See* § 1015(a). Thus, if a partner receives a portion of his partnership interest via gift, he is a donee, and his adjusted basis with respect to that portion of his interest would be the same as the donor's basis, assuming the donor's basis did not exceed the fair market value of the interest at the time of the gift.

Furthermore, it should be noted that the value of services performed is not included in basis unless and until the value of those services performed has been subjected to tax. *See Hutcheson v. Commissioner*, 17 T.C. 14, 19 (1951); *see also Tonn v. Commissioner*, T.C. Memo. 2001-123, *aff'd*, 40 F. App'x 337 (8th Cir. 2002).

On June 9, 2011, Mr. Simpson, acting in his role as president of Getify, caused the certificate of formation for Co-Working to be filed in Texas. Getify served as Co-Working's operating manager and registered agent. An "Initial Investment Agreement" was entered into between Getify, Niyolab, LLC, and Casey Software, LLC, whereby each entity pledged $2,500 to be "co-equal partners" in the venture and that the funds could be used towards reasonable business startup costs. The agreement was entered into on July 22, 2011, and was binding until October 31, 2011.

At trial, Mr. Simpson testified that the other two partners made more financial contributions to Co-Working while he, acting as Getify's agent, provided more sweat equity. He also testified that, at some point after the Initial Investment Agreement was signed, emails were sent between Co-Working's partners that corroborated their supposed agreement concerning the other two partners' intentions to gift portions of their interests in Co-Working to Getify. No emails or any other documentary evidence of this arrangement was entered into evidence nor was there testimony from a representative of either of the other two partners.

**[\*28]** Moreover, under Texas law, an LLC is required to keep (1) a current list that includes the percentage or other interest in the LLC owned by each member and (2) a written statement of the amount of a cash contribution and a description and statement of the agreed value of any other contribution made or agreed to be made by each member as well as the dates any contribution is made by each member (unless that information is contained within the company agreement).[21] *See* Tex. Bus. Orgs. Code Ann. § 101.501(a)(1), (7) (West 2011). Petitioners provided neither the list of ownership percentages nor the written statement, and that information is not otherwise contained within Co-Working's articles of organization.

Additionally, petitioners assert that, during taxable year 2011, they, on Getify's behalf, made capital contributions to Co-Working of $2,250 beyond what respondent agrees has been substantiated. As evidence of $550 of these contributions, petitioners point to their own bank records, which indicate that checks were drawn on the account but do not make note of the checks' recipient(s). The remaining $1,700 was supposedly a cash contribution made by petitioners, documentary evidence of which is limited to a bank statement showing a $1,700 cash withdrawal from petitioners' checking account. Mr. Simpson testified that he was unable to provide additional documentary evidence to substantiate these contributions because he did not have permission to provide, among other things, Co-Working's bank records.

This testimony is not reliable. Under Texas law, all entities are required to keep books and records of accounts. Tex. Bus. Orgs. Code Ann. § 3.151 (West 2011). Moreover, a member of an LLC or an assignee of a membership interest in an LLC, on written request and for a proper purpose, may examine and copy such records at any reasonable time. *Id.* § 101.502. Getify, and by association, Mr. Simpson, was Co-Working's registered agent and manager. Consequently, Mr. Simpson did not need permission from the other partners or his accountant to access and use those records; under Texas law, he had the right to review and copy them at any reasonable time.

Where a party fails to introduce evidence within his possession which, if true, would be favorable to him, there arises a presumption that if the evidence was produced, it would be unfavorable. *Wichita*

---

[21] A "company agreement" means any agreement, written or oral, of the members concerning the affairs or the conduct of the business of an LLC. Tex. Bus. Orgs. Code Ann. § 101.001(1) (West 2011).

**[\*29]** *Terminal Elevator Co. v. Commissioner*, 6 T.C. 1158 (1946). Although the necessary evidence to substantiate the alleged contributions and gifted interest arrangement may not have been in petitioners' personal possession, it should have been readily accessible to Mr. Simpson as Getify's agent. His failure to offer such records as evidence creates a presumption that such evidence would be unfavorable to petitioners.

The documentary evidence that petitioners have put forth regarding both the gifted interest arrangement and the additional contributions is not enough for petitioners to meet their burden of proof or to warrant a finding that they had a sufficient basis in Co-Working to justify a share of the partnership's losses beyond what respondent has already allowed. Even if the parties agreed to take an equal distributive share of profits and losses, as indicated in Co-Working's "Initial Investment Agreement," a partner's distributive share of partnership loss is allowed only to the extent of the adjusted basis of the partner's interest in the partnership at the end of the year in which the loss occurred. *See* § 704(d). As such, we hold that petitioners did not substantiate that Getify had a sufficient basis in Co-Working to justify their purported losses and that their losses related to Co-Working are limited to what respondent has allowed.

V.    *Accuracy-Related Penalties Under Section 6662(a)*

Respondent determined section 6662(a) accuracy-related penalties against petitioners for taxable years 2011, 2012, and 2013. Section 6662(a) applies to the portion of any underpayment that is attributable to, among other things, any substantial understatement of income tax. § 6662(b)(2). A substantial understatement of income tax exists if the amount of the understatement exceeds the greater of ten percent of the tax required to be shown on the return or $5,000. § 6662(d)(1)(A). For any substantial understatement of income tax, section 6662(a) provides for the imposition of an accuracy-related penalty in an amount equal to 20% of the portion of the underpayment of tax required to be shown on the return.

The Commissioner bears the burden of production with respect to the liability of an individual for any penalty. § 7491(c). To satisfy his burden, the Commissioner must present sufficient evidence to show that it is appropriate to impose the penalty in the absence of available defenses. *See Higbee*, 116 T.C. at 446. Once the Commissioner meets his burden of production on penalties, the taxpayer must come forward with

**[\*30]** persuasive evidence that the Commissioner's showing is incorrect. Rule 142(a); *Higbee*, 116 T.C. at 447.

In the instant case, respondent determined deficiencies of $12,874, $18,866, and $18,359 for taxable years 2011, 2012, and 2013, respectively. In light of the parties' concessions and our holdings above, the deficiencies appear to exceed ten percent of the tax required to be reported on petitioners' original returns. Thus, the requirements of a substantial understatement for each year appear to have been met.[22] Moreover, respondent has established that the managerial approval requirements of section 6751(b)(1) have been met, as the examiner's supervisor signed the relevant Civil Penalty Approval Forms before the date when petitioners were first notified in writing that respondent proposed the assessment of the penalties. *See Belair Woods, LLC v. Commissioner*, 154 T.C. 1 (2020).[23] Respondent has met his burden of production, and petitioners have not established any persuasive evidence showing that the determination is incorrect. *See* Rule 142(a); *Higbee*, 116 T.C. at 447. Consequently, we sustain respondent's determinations with respect to the section 6662(a) accuracy-related penalties for taxable years 2011, 2012, and 2013.

---

[22] A final determination must await the submission of computations under Rule 155, which we will order. Because the deficiencies respondent determined appear to represent a substantial understatement of income tax for each year by petitioners, we find it unnecessary to engage in an analysis with respect to section 6662(b)(1).

[23] Appeal of this case would presumably lie in the U.S. Court of Appeals for the Fifth Circuit. § 7482(b)(1)(G); *Golsen v. Commissioner*, 54 T.C. 742 (1970), *aff'd*, 445 F.2d 985 (10th Cir. 1971). *Golsen* stands for the proposition that this Court will apply the decision of the Court of Appeals that is "squarely in point where appeal from our decision lies to that Court of Appeals and to that court alone," and, as a corollary, that this Court's own view(s) will be given effect to the extent the relevant Court of Appeals has not expressed one. *See Golsen*, 54 T.C. at 757.

We recognize that there is a split among circuits as to whether written supervisory approval must be obtained before the IRS issues a formal communication of the penalty such as a notice of deficiency, *Chai v. Commissioner*, 851 F.3d 190, 221 (2d Cir. 2017), *aff'g in part, rev'g in part* T.C. Memo. 2015-42, or merely before the assessment, *Kroner v. Commissioner*, 48 F.4th 1272, 1278–79 (11th Cir. 2022), *rev'g in part* T.C. Memo. 2020-73; *see also Laidlaw's Harley Davidson Sales, Inc. v. Commissioner*, 29 F.4th 1066, 1074 (9th Cir. 2022) (holding that section 6751(b)(1) "requires written supervisory approval before the assessment of the penalty or, if earlier, before the relevant supervisor loses discretion whether to approve the penalty assessment"), *rev'g and remanding* 154 T.C. 68 (2020). The Fifth Circuit does not appear to have taken a clear stance on this issue. *See PBBM-Rose Hill, Ltd. v. Commissioner*, 900 F.3d 193, 213 (5th Cir. 2018).

**[\*31]** VI.     *Additions to Tax for Failure to Timely File Under Section 6651(a)(1)*

Finally, we address the additions to tax determined against petitioners for taxable years 2012 and 2013. Under section 6651(a)(1), when a taxpayer fails to file any required return on the date prescribed for filing:

> [U]nless it is shown that such failure is due to reasonable cause and not due to willful neglect, there shall be added to the amount required to be shown as tax on such return 5 percent of the amount of such tax if the failure is for not more than 1 month, with an additional 5 percent for each additional month or fraction thereof during which such failure continues, not exceeding 25 percent in the aggregate . . . .

Petitioners' 2012 tax return was, after extension, due on October 15, 2013. There is conflicting evidence in the record as to when the return was filed. The IRS account transcript suggests the return was filed on April 23, 2014. Meanwhile, the return itself was stamped as received on August 12, 2014, and the parties stipulated that filing date. In either case, the return was delinquent by more than six months. On posttrial brief, petitioners concede that the late filing of the 2012 return should be subject to the maximum 25% addition to tax imposed under section 6651(a).

Petitioners' 2013 tax return was, after extension, due on October 14, 2014. As with petitioners' 2012 return, there is conflicting evidence in the record regarding when the 2013 return was filed. The IRS Account Transcript suggests the return was filed on December 3, 2014. Meanwhile, the return itself was stamped as received on April 28, 2015, and the parties stipulated that filing date. On brief, petitioners allege that they did not timely file their 2013 return because the examination that was ongoing with respect to their 2011 return "could subject [them] to . . . penalties."

There is nothing in the record to indicate that petitioners sought to prepare their 2013 return in accordance with respondent's determinations from the examination of their 2011 return. In preparing their return for taxable year 2013, petitioners appear to have taken the same cavalier approach to deductions as they did when preparing their returns for the prior taxable years. Moreover, petitioners did not receive

**[\*32]** respondent's examination report concerning the audits until October 20, 2015, months after they filed the return. Thus, regardless of whether the 2013 return was filed in December 2014 or April 2015, the assertion that the return was filed late on account of an effort to adjust to the results of the 2011 exam is not credible and there is no evidence in the record to support it. As such, petitioners did not prove that the tardiness of their filing was due to reasonable cause. *See* § 6651(a)(1).

While the discrepancy in the record regarding the filing date of the 2013 return is potentially problematic for the purposes of calculating how late it was (and thus, what the proper addition to tax should be under section 6651(a)(1)), the parties stipulated that the Form 1040 for the 2013 tax year was filed on April 28, 2015, and petitioners asserted in their posttrial brief that "the 2013 tax year Form 1040 was filed on April 28, 2015." For purposes of resolving the timing issue, we will hold petitioners to the stipulation.[24] Thus, petitioners' 2013 tax return was filed more than six months late and should be subject to the addition to tax respondent determined in the notice of deficiency.

## VII.  *Conclusion*

We hold that (1) the deductions at issue are properly deductible by petitioners as unreimbursed employee expenses subject to the two-percent limitation of section 67(a), and are reportable on Schedules A of petitioners' Forms 1040; (2) with the exception of petitioners' expenses for business use of the home for taxable year 2012, the expenses that petitioners claim beyond what respondent has allowed have not been substantiated; (3) petitioners did not substantiate their basis in Co-Working and are limited to the losses respondent allowed; (4) petitioners are liable for accuracy-related penalties under section

---

[24] Rule 91(e) provides: "A stipulation shall be treated, to the extent of its terms, as a conclusive admission by the parties to the stipulation, unless otherwise permitted by the Court or agreed upon by those parties." Stipulations, like contracts, bind the parties to their terms. *See McGivney v. Commissioner*, T.C. Memo. 2000-224, 2000 WL 1036364, at \*1 (citing *Stamos v. Commissioner*, 87 T.C. 1451, 1455 (1986)). Although we may disregard a stipulation between parties if the evidence contrary to the stipulation is substantial or the stipulation is clearly contrary to facts disclosed by the record, *see Loftin & Woodard, Inc. v. United States*, 577 F.2d 1206, 1232 (5th Cir. 1978); *Jasionowski v. Commissioner*, 66 T.C. 312, 317–18 (1976), the parties' stipulation regarding the filing date coincides with the date that the return was stamped as being received. Consequently, the stipulation regarding the filing date is not clearly contrary to the facts disclosed by the record. Moreover, we do not consider the date on the account transcript to be substantial evidence. We are therefore not inclined to disregard the stipulation.

**[\*33]** 6662(a) for taxable years 2011, 2012, and 2013; and (5) petitioners are liable for additions to tax resulting from their failure to timely file tax returns under section 6651(a)(1) with respect to taxable years 2012 and 2013.

We have considered all of the arguments made by the parties, and to the extent not mentioned above, we conclude that they are moot, irrelevant, or without merit. To reflect the foregoing,

*Decision will be entered under Rule 155.*